United States District Court
Southern District of Texas
**ENTERED**
January 04, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ALEXANDRA GONZALEZ, § | |
| Plaintiff, § | |
| § | |
| v. § | Case No. 1:17-cv-098 |
| § | |
| CLAUDINE O'CARROLL, et al., § | |
| Defendants. § | |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

The Court is in receipt of Defendants Claudine O'Carroll and Victor Carranza's "Motion for Summary Judgment" (hereinafter, Defendants' "Motion" or "Motion for Summary Judgment"). Dkt. No. 21. The Court is also in receipt of Plaintiff Alexandra Gonzalez's "Response to Defendants' Motion for Summary Judgment" (hereinafter, Plaintiff's "Response"). Dkt. No. 23. O'Carroll and Carranza replied to Gonzalez's Response with "Defendants' Objections and Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment" (hereinafter, Defendants' "Reply"). Dkt. No. 25. With leave of the Court, Gonzalez filed a "Sur-Reply to Defendants' Motion for Summary Judgment" (hereinafter, Plaintiff's "Sur-Reply"). Dkt. Nos. 26−28. For the reasons stated below, it is recommended that the Defendants' Motion for Summary Judgment be **GRANTED**. It is further recommended that Gonzalez's claims be **DISMISSED**, and that the Clerk of Court be directed to close this case.

## I. Background and Procedural History

Late in the evening of February 28, 2015[1] and into the morning of March 1, 2015, Gonzalez was out celebrating her friend Nicole Alverez's bachelorette party at the Coral Reef, a bar on South Padre Island, Texas. Dkt. No. 12 at 3; Dkt. No. 21 at 2. A physical altercation ensued outside the Coral Reef between some bachelorette party attendees and three other women: Rubina Marie Delgado, Caroline Terry, and Nicole Kamper. As Terry called the police, members of the bachelorette party left in a taxi. Dkt. No. 24-3 (containing the audio recording of Terry's 911 call). Police Sergeant James Woodward arrived at the Coral Reef shortly thereafter. Sgt. Woodward spoke to Delgado, and "observe[d] that [Delgado] did have abrasions to her forehead and a small cut to the left corner of her lip and an abrasion to the left side of her cheek." Dkt. No. 21-1 at 3. On March 3, 2015, Terry provided a written "assault victim statement" to the South Padre Island Police Department. Dkt. No. 21-1 at 6−7. Delgado, Terry, and Kamper all supplied additional information to the police department in the days following the incident. Dkt. No. 21-1 at 11−12. Delgado indicated to Sgt. Woodward that she wanted to press charges against the women who had assaulted her. Dkt. No. 12-1 at 11; Dkt. No. 21-1 at 3.

Victor Carranza, a South Padre Island Police Detective, was assigned "to conduct a background investigation" into the incident. Dkt. No. 21-1 at 9. As part of his investigation, Det. Carranza conferred with his fellow officers, reviewed video footage from the Coral Reef, interviewed attendees of the bachelorette party,

---

[1] Although the Amended Complaint alleges that the incident "had occurred on or about February 29, 2015 and March 1, 2015," (Dkt. No. 12 at 3) the Court notes that February only had 28 days in 2015.

obtained further information from the alleged victims, and contacted additional witnesses to the altercation. Dkt. No. 12-1 at 13−17. Det. Carranza also spoke with Alejandra Banales-Esquivel, who had attended the bachelorette party but left the Coral Reef prior to the incident. Dkt. No. 21-1 at 12. Det. Carranza recorded his interview with Banales-Esquivel, which took place on March 3, 2015. Dkt. No. 24-2 (video recording of the interview). Banales-Esquivel told Det. Carranza that she was not at the Coral Reef during the fight, but she was at a residence where members of the bachelorette party returned afterward. *Id.* Banales-Esquivel identified Gonzalez as one of the bachelorette party participants who was "for sure involved" in the altercation. *Id.* at 17:20−18:00. At the end of the interview, Banales-Esquivel speculated that "nobody was aggressive that night" and that she "would consider it self-defense." *Id.* at 49:15−50:00. She made these statements while suggesting that the officers be lenient with Alverez, telling them that the wedding was in a few days and that Alverez's grandmother had recently passed away. *Id.* at 48:00−51:00.

Det. Carranza provided the results of his investigation to his superiors and received authorization to present the case to a magistrate. Dkt. No. 21-1 at 2. On March 30, 2015, Carranza brought the case before a magistrate, requesting the issuance of arrest warrants for Gonzalez and two other members of the bachelorette party. *Id.* at 2, 17. The magistrate issued an Order Finding Probable Cause and the corresponding arrest warrants. *Id.* at 18. The warrant for Gonzalez's arrest

was executed on April 15, 2015. *Id.*; *see also* Dkt. No. 23 at 8. The criminal charges against Gonzalez were ultimately dismissed. Dkt. No. 12 at 11.

On February 16, 2017, Gonzalez filed suit against O'Carroll and Carranza in the 404th Judicial District Court of Cameron County, Texas for improperly arresting her in violation of the Texas Constitution. Dkt. No. 1-1 at 2–14. Gonzalez amended her state court Petition, adding allegations that O'Carroll and Carranza violated her Fourth Amendment rights which gave rise to a cause of action under 42 U.S.C. § 1983. *Id.* at 35. Based on the addition of a federal claim, O'Carroll and Carranza filed a "Notice of Removal" on May 1, 2017. Dkt. No. 1. Gonzalez filed an "Amended Federal Complaint" (hereinafter, Gonzalez's "Complaint") on August 10, 2017. Dkt. No. 12. In the Complaint, Gonzalez characterizes her claims as follows:

> The Complainant is alleging . . . that she was arrested without probable cause and deprived of her liberty without regard of her clearly established Constitutional Rights as a U.S. Citizen pursuant the U.S. Constitution, Amendment 4 and deprived of her civil rights under Title 42 U.S.C. Sec. 1983 and without regard for due course of the law, in violation of . . . sections of the Texas Constitution and Texas Code of Criminal Procedure.

*Id.* at 2 (errors in original). Gonzalez requests "actual damages" in addition to a "[d]eclaratory [j]udgment declaring [that her] civil rights were violated." *Id.* at 12.

The Defendants moved for summary judgment. Dkt. No. 21. In their Motion, the Defendants argue that (1) the magistrate's finding of probable cause broke the causal chain of any alleged Fourth Amendment violation, (2) Gonzalez failed to meet her burden to show that the Defendants are not entitled to qualified immunity, and (3) Gonzalez's request for a declaratory judgment is not authorized. *Id.* at 4–5. In her Response, Gonzalez insists that Carranza withheld certain

exculpatory facts from the magistrate, thereby rendering the magistrate's probable cause determination invalid. Dkt. No. 23 at 3. She further contends that O'Carroll "had a personal vendetta out for Nicole Alverez and Alexandra Gonzalez," and that it motivated O'Carroll to conspire with Carranza to arrest her. *Id.* at 12. In support of these allegations, Gonzalez offers affidavits from herself, Nicole Alverez, and Gonzalez's criminal defense attorney, John Blaylock. Dkt. No. 23-1 at 3–9. Gonzalez argues that the Court should grant summary judgment in her favor. Dkt. No. 23 at 2.

In their Reply, the Defendants object to the proffered affidavits on grounds that each contains inadmissible hearsay. Dkt. No. 25 at 1–3. The Defendants reiterate that the magistrate found probable cause based on Det. Carranza's investigation, that Gonzalez failed to identify any action by O'Carroll that violated her rights, and that both Defendants are entitled to qualified immunity. *Id.* at 4. Gonzalez's Sur-Reply addresses the admissibility of the affidavits and again requests the Court grant summary judgment in her favor. Dkt. No. 28. Alternatively, she requests "deferment of a ruling under FRCP(d)(1) . . . or an opportunity to address or support any deficiencies the Court finds under FRCP 56(e)(1)."[2] *Id.* at 3 (errors in original).

## II.  Legal Standards

### A. Federal Rule of Civil Procedure 56

---

[2] Although Gonzalez requests deferment of a ruling pursuant to "FRCP(d)(1)," the Court understands this language to be a reference to Federal Rule of Civil Procedure 56(d)(1). That rule states that, where the non-movant illustrates that it cannot yet "present facts essential to justify its opposition, the court may . . . defer considering the motion" for summary judgment. FED. R. CIV. P. 56(d)(1).

Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also* FED. R. CIV. P. 56. A court shall grant summary judgment if the movant demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party may meet its burden "by pointing out 'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)). If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). A fact is material if its resolution could affect the outcome of the action, and a disputed material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

"There is a genuine dispute of material fact only where a reasonable jury could look at the evidence and return a verdict for the non-movant." *Johnson v. Thibodaux City*, 887 F.3d 726, 735 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding whether a genuine issue of material fact exists, the facts are viewed in the light most favorable to the non-moving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412–13 (5th Cir. 2003). "It is not the court's role on summary judgment to weigh competing evidence or make credibility determinations." *Grogan v. Kumar*, 873 F.3d 273, 279 (5th Cir. 2017). Factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999)). The non-movant's burden is not satisfied by mere reliance on the allegations or denials in its pleadings. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994). Likewise, conclusory statements, speculation, and unsubstantiated assertions do not defeat a motion for summary judgment. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *see also Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

If the non-movant fails to refer to evidence in the record in response to the motion for summary judgment, even if it exists, that evidence is not properly before the district court. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). In the

absence of proof, the court will not assume that the non-movant could or would prove a necessary fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Rather, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" FED. R. CIV. P. 56(e).

### B. Qualified Immunity

Qualified immunity "shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (alterations in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). "When resolving qualified immunity on summary judgment, courts determine (1) whether the facts, taken in the light most favorable to the party asserting the injury, show the officer violated a federal right and (2) whether the right was 'clearly established' when the violation occurred." *Winfrey v. Rogers*, 901 F.3d 483, 493 (5th Cir. 2018) (citing *Tolan v. Cotton*, 572 U.S. 650, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)). Once the defense is raised, "the burden then shifts to the

plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). The plaintiff need not "present absolute proof" to defeat an assertion of qualified immunity, "but must offer more than 'mere allegations.'" *King*, 821 F.3d at 652. Courts must continue to view all evidence in the light most favorable to the non-movant. *See, e.g.*, *Chacon v. Copeland*, 577 Fed. Appx. 355, 360 (5th Cir. 2014) (per curiam).

"[Q]ualified immunity presents a question of law to be determined by the court," but "'when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury.'" *Heaney v. Roberts*, 846 F.3d 795, 802 n.3 (5th Cir. 2017) (citing *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006)). "[O]rders denying qualified immunity are immediately appealable only if they are predicated on conclusions of law, and not if a genuine issue of material fact precludes summary judgment on the question of qualified immunity." *Naylor v. State of Louisiana, Dep't of Corrections*, 123 F.3d 855, 857 (5th Cir. 1997) (per curiam). A genuinely disputed fact is material if a determination of qualified immunity would require resolution of that fact. *Lytle v. Bexar Cty.*, 560 F.3d 404, 408 (5th Cir. 2009).

In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Although this does not mean that "a case directly on point" is

required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011). "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc)). What is "required to overcome a claim of qualified immunity . . . [is] not that the specific police action [has] been held unlawful, but only that it be apparent 'in the light of pre-existing law' that such action would be unlawful." *Wagner v. Bay City*, 227 F.3d 316, 323 (5th Cir. 2000) (citing *Anderson*, 483 U.S. at 640).

### III. Discussion

"Section 1983 provides a claim against anyone who 'under color of any statute, ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citing 42 U.S.C. § 1983). To prevail on a § 1983 claim, the plaintiff must show that the defendants (1) violated one of her constitutional rights, (2) while acting under color of state law. *Moody v. Farrell*, 868 F.3d 348, 351 (5th Cir. 2017). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere." *Colson v. Grohman*, 174 F.3d 498,

504 n.2 (5th Cir. 1999). In this case, the Fourth Amendment's prohibition on unreasonable searches and seizures provides the basis for Gonzalez's § 1983 claim.

"Public officials are entitled to qualified immunity unless the plaintiff can plead specific allegations demonstrating (1) the violation of a constitutional right that (2) was clearly established at the time of the alleged misconduct." *Linicomn v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). Here, Defendants O'Carroll and Carranza are both law enforcement officers who have invoked qualified immunity and moved for summary judgment. Dkt. No. 12 at 1, 3; Dkt. No. 21 at 16. The Defendants' "good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (internal citations omitted). "To negate a defense of qualified immunity and avoid summary judgment," Gonzalez "need not present 'absolute proof,' but must offer more than 'mere allegations.'" *King*, 821 F.3d at 654 (citing *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)). While Gonzalez is correct that she "has a clearly established right to be free from arrests without probable cause," (Dkt. No. 28 at 2) she has not alleged facts showing that Carranza and O'Carroll took actions which violated this right.

Gonzalez offers three primary arguments to support her claim that Carranza and O'Carroll violated her Fourth Amendment rights. First, she alleges that "[t]he investigation . . . failed to properly identify [Gonzalez] as a perpetrator of the assaultive conduct reported that night/morning." Dkt. No. 12 at 4. Gonzalez

references many facets of the investigation which she believes render it constitutionally deficient: (1) "[t]he reports [were] contradictory as to whether the victim could identify the perpetrators and do not clearly identify [Gonzalez] as a perpetrator of the assault"; (2) "[Banales-Esquivel's] video interview is inconclusive regarding the participation of [Gonzalez] in the assaultive conduct"; (3) Gonzalez "was only identified as trying to pull another actor in the incident away from the altercation"; and (4) "[t]he 'photographs' . . . used to 'identify' [Gonzalez] were not photographs from the night in question, but rather from other sources. Nor, were they part of a formal photo ID lineup." Dkt. No. 12 at 9. The crux of her argument is that the "investigation was poorly done, especially, regarding the process for identification of the perpetrators." *Id.* at 4.

However, Gonzalez fails to connect any of these purported deficiencies in the investigation to a violation of her constitutional rights. Carranza obtained multiple identifications before requesting the issuance of an arrest warrant. Dkt. No. 12-1 at 3. Within days of the incident, multiple police officers spoke to and obtained written statements from Delgado, Terry, and Kamper. Dkt. No. 21-1 at 4–8. Carranza also reviewed video footage of the incident from the Coral Reef. *See* Dkt. No. 22; *see also* Dkt. No. 21-1 at 12. He interviewed Banales-Esquivel—a member of the bachelorette party—in part to identify the women in the surveillance video. Dkt. No. 21-1 at 12–13. Although it is clear Gonzalez disagrees with the results of Carranza's investigation, she does not meet her burden of showing that any of his

actions during the course of his investigation violated her clearly established constitutional rights.

Second, and related to her claim that the investigation was inadequate, Gonzalez alleges that "[t]here was no justification or authority, or in particular, any probable cause for Defendants to arrest [Gonzalez]." Dkt. No. 12 at 11. Gonzalez elaborates on this claim, further alleging that Carranza omitted information from his affidavit in support of his application for the arrest warrant that would "tend to dissipate probable cause and indicate Ms. Gonzalez'[s] involvement amounted to a good-samaritan attempt to stop the fight." Dkt. No. 23 at 7. She argues that "[q]ualified immunity is defeated by the material omissions from the affidavit for warrant of arrest." *Id.* at 7–8.

"It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citing *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994)). "[T]he initiating party may be liable for false arrest," however, "if the plaintiff shows that 'the deliberations of that intermediary were in some way tainted by the actions of the defendant.'" *Id.* (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988)). But, "because the intermediary's deliberations protect even officers with malicious intent," a plaintiff must show that the officer's malicious motive caused him to withhold relevant information or otherwise misdirect the independent intermediary by omission or

commission. *Buehler v. City of Austin/Austin Police Dep't.*, 824 F.3d 548, 555 (5th Cir. 2016) (citing *Hand*, 838 F.2d at 1427). In the Fifth Circuit, "mere allegations of 'taint,' without more, are insufficient to overcome summary judgment." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813–14 (5th Cir. 2010) (finding no "fact issue" regarding whether appellees tainted the decision of two grand juries to return indictments); *Taylor*, 36 F.3d at 456–57 (finding that plaintiffs presented no summary judgment evidence showing that the intermediary was tainted by the actions of the defendants); *Buehler*, 824 F.3d at 555–56 (finding no error in district court summary judgment ruling that appellant "failed to show a triable issue whether the grand jury's findings of probable cause were tainted by false or misleading statements by the arresting officers").

Here, Gonzalez has not raised a genuine factual issue about whether Carranza's actions tainted the magistrate's probable cause determination. In her deposition testimony, Gonzalez concedes that she has no knowledge of what facts, information, or documents Carranza provided for the magistrate's probable cause determination. Dkt. No. 21-2 at 24–32. Gonzalez's only basis for believing that Carranza "misrepresented or lied to the magistrate about" his investigation is that Carranza "came to the conclusion that it was [Gonzalez]." *Id.* at 30.

Even assuming Gonzalez could prove that Carranza acted out of malice toward her, this would not defeat his claim of qualified immunity. *Hand*, 838 F.2d at 1427–28. To survive summary judgment, Gonzalez needs to demonstrate that Carranza's alleged malice toward her caused him to withhold specific, material facts

intending to mislead the magistrate. *Id.*; *see also Taylor*, 36 F.3d at 457−58; *Buehler*, 824 F.3d at 554−55. When asked whether she thought "Detective Carranza had any personal bias toward" her, Gonzalez replied that she did not. Dkt. No. 21-2 at 13. Instead, Gonzalez theorizes that Carranza was "following somebody else's instructions." *Id.* at 12. In light of the magistrate's probable cause determination, Gonzalez fails to show a triable issue regarding whether Carranza violated her Fourth Amendment rights.

Third, Gonzalez alleges that "Defendant, O'Carroll, motivated by malice, had Defendant, Carranza, initiate the prosecution of [Gonzalez]." Dkt. No. 12 at 4 (errors in original). She elaborates that "personal prejudice and ill-will, toward [Gonzalez] and her companion, Nicole [Alverez], on the part of the Defendants motivated the Defendants' actions, including the process of determining the identification of [Gonzalez], as a perpetrator of the offense charged." *Id.* at 10. Gonzalez testified at her deposition that she believed O'Carroll had "animosity or bias against" her because Gonzalez is "a female officer." Dkt. No. 21-2 at 14−15. When asked to elaborate, Gonzalez simply stated "that's just [her] belief" because she was arrested in connection with the assault. *Id.* at 15. Gonzalez explained that she heard secondhand about past disputes between O'Carroll and Alverez. *Id.* at 19−20. Gonzalez, then, speculated that O'Carroll must have been involved in the arrest, instructing Carranza's investigation. *Id.* at 26−27. However, Gonzalez conceded multiple times during her deposition that she had no personal knowledge

of O'Carroll's alleged bias or information to show O'Carroll's direct involvement in her arrest or the investigation. *See, e.g.*, *id.* at 14–20, 32.

The only other evidence Gonzalez has produced to support her allegations of bias are three affidavits, which she filed in connection with her Response. *See* Dkt. No. 23-1. One affidavit is from Gonzalez, stating that she "was told by Jaime Rodriguez, an officer at the Port Isabel Police Department, that Claudine O'Carroll was 'after [her] badge.'" Dkt. No. 23-1 at 4. Another affidavit is from Nicole Alverez. In her affidavit, Alverez attests to a phone call between herself and Jaime Rodriguez during which "Jaime Rodriguez stated that . . . Claudine O'Carroll was after 'you all.'" *Id.* at 6. Alverez also states that Jaime Rodriguez told her "that Claudine O'Carroll was out to have [Alverez] lose [her] police badge." *Id.* Further, Alverez states that she "later heard from Norman Esquivel, a Police Officer, that Victor Carranza had told him that he was only following Claudine O'Carroll's orders to pursue a case against" members of the bachelorette party. *Id.* at 7. The third affidavit is from John Blaylock, an attorney who represented Alverez and Gonzalez during their criminal proceedings for the assault charges. Blaylock states that:

> As a result of my investigation, it was determined that Nicole Alverez and, Alexandra Gonzalez were arrested and prosecuted as a part of a personal vendetta initiated by Claudine O'Carroll of the South Padre Island Police Department, with the aid of Detective Victor Carranza, her subordinate. This fact was related to me by several witnesses from the law enforcement community of Port Isabel and South Padre Island.

*Id.* at 9. These affidavits are the only sources supporting Gonzalez's allegations that (1) O'Carroll had any involvement in the assault investigation, and (2)

Carranza was motivated by ill-will toward Gonzalez during the investigation and procurement of arrest warrants.

An affidavit cannot defeat summary judgment unless it contains competent and otherwise admissible evidence. FED. R. CIV. P. 56(c)(4). Defendants argue in their Reply that these affidavits "contain statements that include inadmissible hearsay, double hearsay and/or irrelevant or immaterial speculation." Dkt. No. 25 at 2. In her Sur-Reply, Gonzalez cites to "Fed. R. Evid. 801(21)," arguing that under this Rule, "reputation concerning a person's character is admissible evidence."[3] Dkt. No. 28 at 2. She concludes that the statements in the affidavits are admissible because they "concern[ ] Defendant O'Carroll's vengeful character against Nicole [Alverez] among the local law enforcement community." *Id.*

Defendants are correct; Gonzalez's framing of these statements as character evidence is misguided. She cites to Blaylock's affidavit, for example, to support her allegation that "Defendant O'Carroll . . . had a personal vendetta out for Nicole Alv[e]rez and Alexandra Gonzalez," and that O'Carroll "conspir[ed] with Defendant Carranza to have Alexandra Gonzalez arrested." Dkt. No. 23 at 12, 15. Gonzalez does not cite to a single case, and the Court has found none, where "vengefulness" has been recognized as a proper character trait falling within the Rule 803(21) hearsay exception. FED. R. EVID. 803(21). Even if vengefulness toward a particular person were proper character trait evidence, Federal Rule of Evidence 404(a)(1) clearly states that "[e]vidence of a person's character or character trait *is not*

---

[3] The Court notes that Federal Rule of Evidence 801 does not have a 21st subdivision. Based on the characterization of the rule, the Court understands this argument to refer to Federal Rule of Evidence 803(21).

*admissible* to prove that on a particular occasion the person acted in accordance with the character or trait." FED. R. EVID. 404(a)(1) (emphasis added). The hearsay statements within the proffered affidavits of Gonzalez, Alverez, and Blaylock are therefore inadmissible because Gonzalez attempts to use them as evidence to show that O'Carroll acted vengefully toward Gonzalez during the criminal investigation. Such use of character trait evidence is barred by Rule 404(a)(1). Gonzalez, then, has failed to show a triable issue as to whether O'Carroll was involved in her arrest or the criminal investigation.

Discovery in this case has concluded, yet Gonzalez has failed to raise any genuine issue of material fact regarding whether either Carranza or O'Carroll violated her Fourth Amendment rights. These failures entitle O'Carroll and Carranza to summary judgment as a matter of law on their claims of qualified immunity.

## IV. Recommendation

For the reasons stated above, it is recommended that the Defendants' Motion for Summary Judgment be **GRANTED**. It is further recommended that Gonzalez's claims be **DISMISSED**, and that the Clerk of Court be directed to close this case.

## V. Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within

fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED on this 4th day of January, 2019 at Brownsville, Texas.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**